UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELINDA ACEVADO and JACQUELINE
LOPEZ, individually and on behalf of all
others similarly situated,

                          Plaintiffs,

        - against -

CITIBANK, N.A.,

                    Defendant.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 8030 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this putative class action, Plaintiffs Celinda Acevado and Jacqueline Lopez

allege that Defendant Citibank, N.A., restrained their bank accounts and charged them fees in

violation of New York's Exempt Income Protection Act (the "EIPA" or the "Act") and state

common law.

        Citibank has moved to dismiss the Amended Complaint pursuant to Fed. R. Civ.

P. 12(b)(1) and (6) or, in the alternative, for an order compelling arbitration and/or granting

summary judgment.[1]  Citibank argues, inter alia, that the EIPA does not create a private right of

action for money damages for an account holder seeking to sue his or her bank for alleged EIPA

violations.

        For the reasons stated below, Citibank's motion to dismiss under Fed. R. Civ. P.

12(b)(6) will be granted in part and denied in part.

---

[1]  Plaintiffs argue that Citibank's motion to dismiss should be stricken for failure to comply with
Fed. R. Civ. P. 5.2, which requires that "[u]nless the court orders otherwise, in an electronic or
paper filing with the court that contains an individual's . . . financial-account number, a party or
nonparty making the filing may include only . . . the last four digits of the financial account
number."  (Pltf. Opp. Br. 6)  On May 31, 2011, this Court issued an order permitting Citibank to
withdraw the unredacted exhibits cited by Plaintiffs and to submit redacted exhibits (Dkt. No.
26), which Citibank has done.

# BACKGROUND[2]

At all relevant times, Plaintiffs – who are New York residents – each maintained an account at one of Citibank's New York City branches.  (Am. Cmplt. ¶¶ 11-12)[3]  Citibank is a Delaware corporation.  (Id. ¶ 10)

In or about June 2009, Acevado received a notice from Citibank stating that her savings account had been frozen due to a restraining notice and/or levy served on Citibank by non-party judgment creditors.  (Id. ¶ 12(b))  At that time, Acevado's account contained approximately $2,000 in wages she had earned.  (Id.)  Citibank charged Acevado an administrative fee of approximately $100 in connection with placing the restraint on her account.  (Id. ¶ 13)  Acevado did not receive any disclosures from Citibank concerning funds that might be exempt from restraint.  (Id.)  Acevado further alleges, "[u]pon information and belief," that she was unable to access the funds in her account as a result of the restraint.  (Id.)

On or about January 5, 2011, Lopez received a notice from Citibank stating that her checking account was frozen due to service of a restraining notice and/or levy by non-party judgment creditors.  (Id. ¶ 14)  At that time, Lopez's account contained approximately $3,305.60 in wages she had earned.  (Id.)  Citibank advised Lopez that her funds would be transferred to a Citibank holding account and charged her an administrative fee of approximately $125 for

---

[2]  The following facts are taken from the Amended Complaint.  "When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts focus primarily on the allegations in the complaint.  However, [where, as here] subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings."  Romano v. Kazacos, 609 F.3d 512, 520 (2d Cir. 2010) (citations omitted); see also McKithen v. Brown, 481 F.3d 89, 95-96 ("'[I]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), [a court] . . . may refer to evidence outside the pleadings.'") (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  Accordingly, in ruling on Citibank's motion to dismiss for lack of subject matter jurisdiction, the Court will consider materials outside the pleadings.
[3]  The Amended Complaint contains two paragraphs numbered 12.  The Court will refer to these paragraphs as 12(a) and 12(b).

processing the restraining notice.  (Id. ¶ 15)  Lopez alleges, "upon information and belief," that she was not able to access the funds in her account as a result of the restraint.  (Id.)

Plaintiffs seek to bring this action on behalf of all Citibank account holders whose accounts were restrained and/or levied upon between January 1, 2009, and the present in violation of the EIPA.  (Id. ¶ 25)  Plaintiffs assert six causes of action:  (1) violations of the EIPA (id. ¶¶ 36-43); (2) conversion (id. ¶¶ 44-48); (3) breach of fiduciary duty (id. ¶¶ 49-52); (4) unjust enrichment (id. ¶¶ 53-59); (5) negligence (id. ¶¶ 60-63); and (6) breach of contract (id. ¶¶ 64-68).  The ad damnum clause of the Amended Complaint recites that the Plaintiffs are seeking, inter alia, compensatory damages and "statutory, exemplary and punitive damages," and an order "[p]ermanently enjoining Defendant from continuing to engage in the unlawful and inequitable conduct alleged herein and requiring Defendant to comply with [the] EIPA."  (Am. Cmplt., ad damnum clause)

## DISCUSSION

## I.   SUBJECT MATTER JURISDICTION

### A.   Applicable Law

Plaintiffs assert that this Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), which provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant. . . .

The CAFA permits aggregation of the claims of individual class members to reach the jurisdictional amount.  28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual

class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 130 S. Ct. 2869 (2010) (quoting Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (internal citations and quotation marks omitted)). "In reviewing a motion to dismiss under Rule 12(b)(1), the court 'must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiffs.'" Wood v. Gen. Motors Corp., No. CV 08-5224(JFB)(AKT), 2010 WL 3613812, at *3 (E.D.N.Y. Aug. 23, 2010) (quoting Toomer v. City of Nassau, 07-CV-01495(JFB)(ETB), 2009 WL 1269946, at *3 (E.D.N.Y. May 5, 2009) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004))).

"Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006); see also Makarova, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). Plaintiffs "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." Blockbuster, 472 F.3d at 58 (citing Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000)).

However, "[o]n a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith." Stengel v. Black, No. 03 Civ. 0495(GEL), 2004 WL 1933612, at *1 (S.D.N.Y. Aug. 30,

2004) (citing St. Paul Mercury Indem., Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)); see also

Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1122 n.8 (11th Cir. 2010) (in an action brought

under CAFA, "[w]e assume that the sum claimed here by [plaintiff] was made in good faith, and

it therefore controls.").  "A suit may not be dismissed for lack of the jurisdictional amount in

controversy unless it appears 'to a legal certainty' that the plaintiff cannot recover the amount

claimed." Stengel, 2004 WL 1933612, at *1 (quoting St. Paul, 303 U.S. at 289); see also Aros v.

United Rentals, Inc., No. 3:10-CV-73(JCH), 2011 WL 1647471, at *2 (D. Conn. Apr. 25, 2011)

(in a class action under CAFA, noting that defendant "has not presented any argument to

demonstrate to a legal certainty that the plaintiff could not recover the amount alleged").  "'[T]he

legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good

faith in asserting the claim.  If the right of recovery is uncertain, the doubt should be resolved . . .

in favor of the subjective good faith of the plaintiff.'"  Stengel, 2004 WL 1933612, at *1

(quoting Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co., 93 F.3d 1064, 1070 (2d

Cir. 1996) (citations omitted)).

       Courts in this Circuit "recognize a 'rebuttable presumption that the face of the

complaint is a good faith representation of the actual amount in controversy.'"  Colavito v. New

York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006) (quoting Wolde-Meskel v.

Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).  "In order to

rebut this presumption, the defendant must show that the complaint 'was so patently deficient as

to reflect to a legal certainty that [the plaintiffs] could not recover the amount alleged or that the

damages alleged were feigned to satisfy jurisdictional minimums.'"  Id.

B.     <u>Analysis</u>

Citibank argues that the Amended Complaint does not adequately allege damages

sufficient to satisfy the $5,000,000 jurisdictional amount threshold under 28 U.S.C. § 1332(d)(2).

The Amended Complaint pleads that the number of class members is "in the thousands" (Am.

Cmplt. ¶ 26) and that "the damages of the Class exceed $5,000,000 in the aggregate."  (<u>Id.</u> ¶ 7)

Citibank contends that "[t]here is no factual basis to support any contention that

the amount in controversy in the aggregate is $5 million" (Def. Br. 9), and has offered evidence

that it has placed restraints on approximately 8,831 accounts pursuant to CPLR § 5222 since

January 2009, resulting in aggregate fees assessed by Citibank of no more than $1,103,875.

(Wagner Decl. ¶ 10; Def. Br. 10)

Plaintiffs seek more in the Amended Complaint than simply the return of fees,

however.  Plaintiffs allege that Citibank denied them access to their funds, and they seek

recovery of those funds.  (Am. Cmplt. ¶¶ 13, 15; Pltf. Opp. Br. 7)  Moreover, in addition to

compensatory damages, Plaintiffs seek "statutory, exemplary and punitive damages" and an

injunction "[p]ermanently enjoining [Citibank] from continuing to engage in the unlawful and

inequitable conduct alleged herein and requiring [Citibank] to comply with [the] EIPA."  (Am.

Cmplt., <u>ad</u> <u>damnum</u> clause)  "Where non-monetary relief is sought, 'the amount in controversy is

measured by the value of the object of the litigation.'"  <u>Ava Acupuncture P.C. v. State Farm Mut.

Auto. Ins. Co.</u>, 592 F. Supp. 2d 522, 527 (S.D.N.Y. 2008) (quoting <u>Hunt v. Washington State

Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977)).  "In traditional class action suits in federal

court under diversity jurisdiction, the object of the litigation has been viewed as 'the monetary

value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were

granted.'" Id. (quoting American Standard, Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007)).

Based on the record here, the Court cannot say to a "legal certainty" that the amount in controversy is less than $5,000,000.  Accordingly, Citibank's motion to dismiss for lack of subject matter jurisdiction will be denied.

## II.    FAILURE TO STATE A CLAIM

### A.    Rule 12(b)(6) Standard

Citibank has also moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco

v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir.

1999)).  Moreover, "[w]here a document is not incorporated by reference, the court may

never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby

rendering the document 'integral' to the complaint."  Id. (quoting Mangiafico v. Blumenthal, 471

F.3d 391, 398 (2d Cir. 2006)).

> **B.      Plaintiffs' EIPA Claim**
>
> > **1.      Statutory Scheme**

The Amended Complaint's first cause of action seeks damages and injunctive

relief based on Citibank's alleged violation of the EIPA.  (Am. Cmplt. ¶¶ 36-43, ad damnum

clause)  The EIPA, enacted in 2008, amends Article 52 of the CPLR, which governs the

enforcement and collection of money judgments in New York courts.  2008 N.Y. Laws Ch. 575

(eff. Jan. 1, 2009).  "These amendments provide significant new substantive and procedural

protections to judgment debtors."  Portfolio Recovery Assocs., LLC v. Calderia, 24 Misc. 3d

1165, 1167 (N.Y. Dist. Ct. 2009).  The stated purpose of the EIPA is to "create a procedure for

the execution of money judgments on bank accounts containing exempt funds to ensure that

debtors can [continue to access those funds]."  Division of the Budget Recommendation, Bill

Jacket to Ch. 575 (Assembly Bill 8527), Laws of New York, 2008.  "To meet this purpose, the

EIPA provides for a method by which a judgment debtor would be advised that certain sources

of income were exempt from execution, a method to claim the exemption and a procedure by

which the court in which the judgment was entered would expeditiously determine the validity of

the claimed exemption."  Midland Funding LLC v. Singleton, 935 N.Y.S.2d 844, 846 (N.Y. Dist. Ct. 2011).

The amendments enacted in the EIPA are set forth in CPLR §§ 5205, 5222, 5222-a, 5230, and 5232.   CPLR § 5222(i) provides that, as of July 24, 2009, a restraining notice served in connection with a judgment debtor's bank account "shall not apply" to the first $1740 in the account – regardless of the source of these funds – unless the court determines that these funds are "unnecessary for the reasonable requirements of the judgment debtor and his or her dependents."[4]  N.Y. C.P.L.R. § 5222(i).

CPLR § 5222-a requires a judgment creditor to serve with any restraining notice an "exemption notice" and two "exemption claim forms," the required format and content of which are set forth in the EIPA.  N.Y. C.P.L.R. § 5222-a(b).  Section 5222-a provides that "[f]ailure to serve the notice and forms together with the restraining notice renders the restraining notice void, and the banking institution shall not restrain the account."  N.Y. C.P.L.R. § 5222-a(b)(1).  Section 5222-a further provides that "[w]ithin two business days after receipt of the restraining notice or execution, exemption notice and exemption claim forms, the banking institution shall serve upon the judgment debtor the copy of the restraining notice, the exemption notice and two exemption claim forms."  N.Y. C.P.L.R. § 5222-a(b)(3).  Section 5222-a also outlines the procedure for claiming an exemption, and a procedure by which a judgment creditor

---

[4]  CPLR § 5205(l) provides for a higher exemption – $2500 – for certain statutorily exempt payments made electronically or via direct deposit into a debtor's bank account within forty-five days prior to service of a restraining notice on a bank.  "[S]tatutorily exempt payments" include, inter alia, "payments from any of the following sources:  social security, including retirement, survivors' and disability benefits, supplemental security income or child support payments; veterans administration benefits; public assistance; workers' compensation; unemployment insurance; public or private pensions; railroad retirement; and black lung benefits."  N.Y. C.P.L.R. § 5205(l)(2).  Because the monies in Plaintiffs' accounts were allegedly from earned wages, the $1740 exemption applies to their accounts.

upon whom an exemption claim form has been served may object to the claimed exemption.

N.Y. C.P.L.R. § 5222-a(d).

> **2.      The EIPA Does Not Create a Private**
> **Cause of Action for Money Damages**

Citibank has moved to dismiss Plaintiffs' EIPA claim, asserting that the EIPA

does not create a private right of action for damages by an account holder against his or her

bank.[5]  (Def. Br. 18)  Citibank argues that

> [a] private damages cause of action against banks is not consistent with the statute
> or the legislative history of the EIPA.  EIPA is a legislative balancing of the rights
> of the judgment debtor and the judgment creditor.  The bank, as garnishee, is
> merely a stakeholder that is caught in the middle between opposing forces.  EIPA
> specifically provides a money damages cause of action only against the judgment
> creditor.  Clearly, the Legislature chose not to include a private right of action
> against banks under EIPA.  Rather, where the legislature intended a private cause
> of action for judgment debtors pursuant to CPLR § 5222, it explicitly provided
> one.

(Id. at 19 (citations omitted))

Plaintiffs contend, however, that the "EIPA creates an express private right of

action" (Pltf. Opp. Br. 8-11), relying on the following language from the Act:

> Within two business days after receipt of the restraining notice or execution,
> exemption notice and exemption claim forms, the banking institution shall serve
> upon the judgment debtor the copy of the restraining notice, the exemption notice
> and two exemption claim forms.  The banking institution shall serve the notice
> and forms by first class mail to the last known address of the judgment debtor.
> The inadvertent failure by a depository institution to provide the notice required
> by this subdivision shall not give rise to liability on the part of the depository
> institution.

N.Y. C.P.L.R. § 5222-a(b)(3) (emphasis added).  Plaintiffs argue that "[u]nder the legislatively

recognized and established canon of statutory construction of expressio unius est exclusio

alterius, the fact that the legislature chose to [explicitly protect banks from liability for an

---

[5]  Citibank does not address whether the EIPA creates a private cause of action permitting an
account holder to seek injunctive relief against his or her bank.

"inadvertent failure . . . to provide the notice required by [§ 5222-a(b)((3)"] means that the legislature intended to allow all other causes of action against banks."[6]  (Pltf. Opp. Br. 8-9)  In the alternative, Plaintiffs argue that "a private right of action is created by implication."  (Id. at 11)

As an initial matter, the Court finds that no provision of the EIPA explicitly grants a private cause of action to an account holder seeking to recover money damages against his or her bank.  While the EIPA authorizes a judgment debtor to sue the judgment creditor where "the judgment creditor disputed [a] claim of exemption in bad faith," and to recover "costs, reasonable attorney fees, actual damages and an amount not to exceed one thousand dollars," N.Y. C.P.L.R. § 5222-a(g), there is no comparable provision authorizing a judgment debtor to sue his or her bank for money damages.

Plaintiffs' expressio unius argument, and claim that "a private right of action is created by implication" in the EIPA are not persuasive to this Court, and have previously been rejected.

In Cruz v. TD Bank, N.A., No. 10 Civ. 8062(PKC), 2012 WL 694267 (S.D.N.Y. Mar. 2, 2012), Judge Castel concluded that the EIPA does not create a private right of action permitting an account holder to sue his or her bank for money damages.  Id. at *7.  In making this determination, Judge Castel explicitly rejected Plaintiffs' expressio unius arguments:

> Plaintiffs ask this Court to infer that by exempting banks for "inadvertent" failures, the New York State Legislature "intended to allow all other causes of actions against banks." . . .
>
> The expressio unius canon does not support this claim.  Properly invoked, expressio unius prevents expanding an enumerated list of items or exceptions; it

---

[6]  "Expressio unius est exclusion alterius" is a "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative."  Black's Law Dictionary (9th ed. 2009).

> does not create new substantive rights by negative inference.  See, e.g., Morales v. Cnty. of Nassau, 94 N.Y.2d 218, 224–25, 703 N.Y.S.2d 61, 724 N.E.2d 756 (N.Y. 1999) (invoking maxim where statute provided "an extensive list of exemptions" to conclude that "an additional exemption" did not exist); Jewish Home & Infirmary v. Comm'r of N.Y. State Dep't of Health, 84 N.Y.2d 252, 262, 616 N.Y.S.2d 458, 640 N.E.2d 125 (N.Y. 1994) (invoking maxim where "the Legislature has addressed [the] subject and . . . created a list of exceptions to a general rule, but has chosen to omit mention of one exception in particular").  The plaintiffs cannot invoke expressio unius to create a new private right of action.

Id. at *8.

In likewise rejecting Plaintiffs' argument that the EIPA creates an implied private right of action, Judge Castel noted that

> [t]he standard for whether an implied right of action exists under New York law is set forth in Sheehy v. Big Flats Community Day. Inc., 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18 (N.Y. 1989).  Where a law does not expressly create a private right of action, one may be implied only if "fairly [ ] implied" from the law's provisions and legislative history.  Sheehy, 73 N.Y.2d at 633, 543 N.Y.S.2d 18, 541 N.E.2d 18.  Sheehy requires a court to consider three factors in making this determination:  "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme."  Id. at 633–34, 543 N.Y.S.2d 18, 541 N.E.2d 18.
>
> The third Sheehy factor is the "most critical."  Mark G. v. Sabol, 93 N.Y.2d 710, 720, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (N.Y. 1999); Grasso, 42 A.D.3d at 136, 836 N.Y.S.2d 40.  "Because of the Legislature's plenary authority over its choice of goals and the methods to effectuate them, 'a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme.'"  Grasso, 42 A.D.3d at 137, 836 N.Y.S.2d 40 (quoting Sheehy, 73 N.Y.2d at 634–35, 543 N.Y.S.2d 18, 541 N.E.2d 18).  Accordingly, if a court is to "imply such a right, [it] must have clear evidence of the Legislature's willingness to expose the [party] to liability that it might not otherwise incur."  Uhr v. E. Greenbush Cent. Sch. Dist., 94 N.Y.2d 32, 42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (N.Y. 1999) (refusing to imply private right of action [where] "no such legislative intent" existed).

Id. at *8-9.

After carefully considering the statutory scheme and the EIPA's legislative history, Judge Castel concluded that the Act does not create a private right of action by a judgment debtor against his or her bank for money damages:

> A private right of action by a judgment debtor against a bank for money damages is not consistent with EIPA's legislative scheme. First, a private right of action is not consistent with Article 52's enforcement mechanisms: "special proceedings" that may be brought in New York state courts. See, e.g., Chase Bank USA, N.A. v. Greene, 901 N.Y.S.2d 898 (N.Y. City Civ. Ct. 2009). CPLR § 5225(b) permits a special proceeding by a creditor against a garnishee to retrieve property. CPLR § 5227 permits a creditor to commence a special proceeding against "any person," including a garnishee, to pay to the creditor a debt owed to the creditor. In both proceedings, notice must be given to the judgment debtor and the court may allow the debtor to intervene. And prior to restraint, CPLR § 5239 permits "any interested person" to commence a special proceeding against a creditor "or other person with whom a dispute exists" to determine competing rights to property. These special proceedings do not fairly imply a post-restraint action by a debtor against a garnishee bank for money damages and injunctive relief. Where the Legislature "specifically considered and expressly provided for enforcement mechanisms" in the statute, recognition of a private right of action is inconsistent with the legislative scheme. Sabol, 93 N.Y.2d at 720–21, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (declining to imply private right of action for money damages from New York Social Services Law).
>
> A private right of action against a bank for money damages is also inconsistent with Article 52's available remedies. CPLR § 5239 permits the court to vacate an execution or levy, direct property, or award damages to "any interest[ed] person" claiming property against another creditor or "other person." It does not allow a debtor to seek damages or injunctive relief against a bank following restraint. CPLR § 5240 allows "any interested person" to request a court [to] modify, cancel, or extend "any enforcement procedure," but does not provide for damages. CPLR § 5251 permits a court to hold "any person" in civil contempt for willfully refusing to obey a restraining notice or court order. See, e.g., Viacom Outdoor Grp., Inc. v. McClair, 62 A.D.3d 864, 864, 878 N.Y.S.2d 785 (2d Dep't 2009) (declining to hold bank in contempt in suit by debtor where bank's delay in lifting restraint "was understandable"). "Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage. . . ." Sheehy, 73 N.Y.2d at 636, 543 N.Y.S.2d 18, 541 N.E.2d 18. In seeking money damages and injunctive relief against TD bank, the plaintiffs ask the Court to afford them a broader remedy than what Article 52 provides.

EIPA's new provisions do not create a process for suing a bank. Rather, they permit debtors and creditors to bring claims against one another. If a creditor objects to a debtor's exemption claim, CPLR § 5222–a(d) provides for a judicial hearing between the debtor and creditor. CPLR § 5222–a(g) goes a step further, awarding a judgment debtor "costs, reasonable attorney fees, [and] actual damages" if the creditor objects in bad faith. EIPA thus specifically allows a judgment debtor to seek money damages against a judgment creditor for a bad faith objection, but contains no corresponding provision allowing an action for damages against a bank. Moreover, EIPA revised the restraining notice provided to the debtor to state "[i]f you think that any of your money that has been taken or held is exempt, . . . [y]ou are allowed to try to prove to a judge that your money is exempt under [CPLR sections 5222–a, 5239 and 5240]." CPLR § 5222. The notice does not represent to debtors that private actions for money damages are available against garnishee banks. Taken together, these provisions do not represent "clear evidence of the Legislature's willingness to expose the [defendant] to liability that it might not otherwise incur." Uhr, 94 N.Y.2d at 42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (declining to imply private right of action against school districts where "no such legislative intent" existed).

EIPA's legislative history also does not fairly imply a private right of action by a debtor against a bank. EIPA's stated purpose is to "create a procedure" that "ensure[s] that debtors can" continue to access exempt funds. Division of the Budget Recommendation, Bill Jacket (Assembly Bill 8527). EIPA's legislative sponsor described it as "permit[ting] the collection process to continue as designed" and "allow[ing] debtors to claim exempt income while continuing to permit creditors to satisfy their judgments." Assembly Sponsor's Letter in Support, Bill Jacket (Assembly Bill 8527). Evidence of the "evolution" of EIPA does not reveal a legislative intent to create new liability on banks. See, e.g., Uhr, 94 N.Y.2d at 40-42, 698 N.Y.S.2d 609, 720 N.E.2d 886 (concluding that "[t]he evolution of [the state education law] is compelling evidence of the Legislature's intent to immunize the school districts from any liability"); Sabol, 93 N.Y.2d at 720, 695 N.Y.S.2d 730, 717 N.E.2d 1067 (referring to memorandum of state senator in concluding that enforcement provisions "were enacted as the 'comprehensive' means by which the statute accomplishes its objectives").

Furthermore, EIPA was "modeled upon" a Connecticut state law addressing its enforcement of money judgments. See Assembly Sponsor's Letter in Support (Assembly Bill 8527). In that law, the Connecticut State Legislature expressly provided a private right of action by a judgment debtor against a bank. Conn. Gen. Stat. § 52–367b(n) (2009). Titled "Liability of financial institution," the applicable provision provides that if a financial institution unlawfully "pays exempt moneys from the account of the judgment debtor . . . , such financial institution shall be liable in an action therefor to the judgment debtor for any exempt moneys so paid and . . . shall refund or waive any charges or fees." Id. But the New York State Legislature did not enact this or a substantially similar provision in EIPA. This conscious variance with the Connecticut statute suggests

that the Legislature did not wish to create the same remedy against banks that Connecticut did. See Sabol, 93 N.Y.2d at 720-21, 695 N.Y.S.2d 730, 717 N.E.2d 1067 ("The Legislature has the authority to determine whether opening the statute to private tort law enforcement would advance [its] objectives. . . . Considering that the statute gives no hint of any private enforcement remedy for money damages, we will not impute one to the lawmakers.").

EIPA imposes new requirements on banks to not unlawfully restrain an account or charge fees pursuant to an improper restraint. See CPLR § 5222(j), 5222–a(b)(1). "A statutory command, however, does not necessarily carry with it a right of private enforcement by means of tort litigation." Uhr, 94 N.Y.2d at 38, 698 N.Y.S.2d 609, 720 N.E.2d 886. The only provision of EIPA addressing bank liability exempts banks from liability for "inadvertent[ly]" failing to comply with the law. CPLR § 5222–a(b)(3). Meanwhile, CPLR § 5222–a(g) specifically creates a damages award against a creditor for bad faith objections, while CPLR § 5252(2) permits an employee to "institute a civil action for damages" against an employer who terminates him because of a wage assignment or income execution. As the Legislature "has not been completely silent but has instead made express provision for civil remedy," this Court will not fashion for plaintiffs a "broader" remedy. Sheehy, 73 N.Y.2d at 636, 543 N.Y.S.2d 18, 541 N.E.2d 18. Given the law's plain words, existing proceedings and remedies, and legislative history, this Court finds no "clear evidence of the Legislature's willingness to expose the [defendant] to liability that it might not otherwise incur." Uhr, 94 N.Y.2d at 40-42, 698 N.Y.S.2d 609, 720 N.E.2d 886.

Id. at 9-11.

This Court finds Judge Castel's analysis and reasoning fully persuasive, and concludes that that there is no express or implied private right of action under the EIPA permitting an account holder to sue his or her bank for money damages related to alleged EIPA violations.[7] Accordingly, Citibank's motion to dismiss Plaintiffs' EIPA claim will be granted to the extent it is addressed to Plaintiffs' claim for money damages. Because Citibank's briefs do not address – in any fashion – whether there is a private cause of action under the EIPA for account holders seeking injunctive relief against their bank for alleged EIPA violations,

---

[7] Justice Fried of the New York Supreme Court, New York County, recently issued a bench ruling in which he held – consistent with Cruz – that "Article 52, specifically CPLR Section 5222, does not provide a private right of action, as asserted here on behalf of the judgment debtor. Rather, by its terms, it provides a . . . right of action [against] the judgment creditor only, as set forth in [CPLR §] 5222 subsection B." Schuyler v. J.P. Morgan Chase, N.A., Index No. 106412/2011 (N.Y. Sup. Ct. Jan. 19, 2012), at 21.

Citibank's motion as to Plaintiff's EIPA claim will be denied to the extent that claim seeks injunctive relief.  This denial is without prejudice.

## III.    PLAINTIFFS' COMMON LAW CAUSES OF ACTION WILL BE DISMISSED

### A.    Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citing Tagare v. Nynex Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)).  "To meet these requirements, the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the documents comprising the agreement."  Kaleida Health v. Medtronic Sofamor Danek USA, Inc., No. 05-CV-0675C(F), 2006 U.S. Dist. LEXIS 92295, at *8 (S.D.N.Y. Dec. 21, 2006).  "However, the plaintiff is not required to attach copies of the contractual documents or plead the terms verbatim.  All that is required is a 'short and plain statement' of the breach of contract claim 'that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Id. (internal citations omitted).

Citibank argues that "Plaintiffs have failed to cite the necessary elements of any breach of contract, failing to allege when or how Citibank failed to perform under the contract, as well as what, if any, damages were incurred."  (Def. Br. 22)  Citibank further contends that "Plaintiffs may not recover under a contract theory for an alleged failure to comply with an existing statute."  (Id. at 23)  Plaintiffs have not responded to Citibank's arguments concerning their breach of contract claim.

Plaintiffs' breach of contract claim is premised on their argument that Citibank has violated the EIPA.  Plaintiffs allege that "Defendant entered into a contract and/or service agreement with each Plaintiff and each Class Member"; that in that agreement Citibank "covenanted to abide by all applicable federal and state laws, to retain Plaintiffs' and Class Members' funds for Plaintiffs' and Class Members' use, and not to unlawfully impose fees on Class Members['] funds"; and that Citibank "breached its agreement . . . in unlawfully restraining Plaintiffs' and Class Members' funds, in unlawfully imposing fees on Plaintiffs' and Class Members' funds and in failing to provide Plaintiffs and Class Members with statutory notices."  (Am. Cmplt. ¶¶ 65-67)  As a result of these alleged breaches, Plaintiffs assert that they and Class Members "were caused to incur damages."  (Id. ¶ 68)

Because Plaintiffs' breach of contract claim "relies entirely on incorporating the requirements of a statute with no private right of action [for damages]. . . , Plaintiffs' claim . . . is precisely the form of 'artful pleading' . . . that state courts have identified as making an impermissible end run around statutes with no private right of action."  Schlessinger v. Valspar Corp., No. 10 CV 2694(DRH)(ETB), 2011 WL 4459070, at *8 (E.D.N.Y. Sept. 23, 2011) (emphasis omitted); cf. Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 12 N.Y.3d 236, 247 (2009) ("That [plaintiff] alleged the elements of common-law fraud does not transmute a prohibited private cause of action to enforce Martin Act disclosure requirements into an independent common-law tort.").  Accordingly, Plaintiffs' breach of contract claim will be dismissed.

### B.     Conversion

"To state a claim for conversion under New York law, plaintiffs must (1) 'show legal ownership of, or a superior possessory right in, the disputed property' and (2) 'that the

defendant exercised an unauthorized dominion over that property to the exclusion of the plaintiffs['] rights.'"  Segal v. Bitar, No. 11 Civ. 4521(LBS), 2012 WL 273609, at *8 (S.D.N.Y. Jan. 30, 2012) (quoting Middle East Banking Co. v. State Street Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987)).  "Interference with a plaintiff's right to possession may be 'by a wrongful:  (i) taking; (ii) detention; or (iii) disposal.'"  Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, No. 10 Civ. 5064(LAK)(GWG), 2011 WL 3463117, at *16 (S.D.N.Y. Sept. 27, 2011) (quoting Corporacion Fruticola De Chincha v. Watermelon Depot, Inc., No. 05 Civ. 6293(KNF), 2008 WL 2986276, at *4 (S.D.N.Y. July 31, 2008) (citing Pierpoint v. Hoyt, 260 N.Y. 26, 29 (1932))).

Plaintiffs' conversion claim is premised on their allegation that Citibank denied them access to the funds in their Citibank accounts.  Citibank argues that the conversion claim must be dismissed, however, because "[t]he proceeds of Plaintiffs' accounts with Citibank are nothing more than intangible unsecured obligations owed to them by their bank."  (Def. Reply Br. 19)  Citibank further argues that "[i]t is . . . a well established principle in New York that the proceeds of a bank account cannot be converted."  (Id. at 20)

In a conversion action, Plaintiffs "must . . . demonstrate that the property in question is a 'specific, identifiable thing.'"  Segal, 2012 WL 273609, at *8 (quoting Cruickshank & Co., Ltd. v. Sorros, 765 F.2d 20, 25 (2d Cir. 1985)).  New York courts have held that "[a] checking account, which does no more than create a debtor-creditor relationship, does not satisfy that requirement and cannot be converted."  Luxonomy Cars v. Citibank, N.A., 65 A.D.2d 549, 550 (2d Dep't 1978) (citing Independence Discount Corp. v. Bressner, 47 A.D.2d 756 (2d Dep't 1975)); see also Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee, 160 F.3d 146, 148 (2d Cir. 1998) ("'funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for

conversion against the bank'") (quoting Chemical Bank v. Ettinger, 196 A.D.2d 711, 714 (1st

Dep't 1993)); Geler v. Nat'l Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)

("[A] bank receiving a general deposit is not a bailee of the deposited funds, but merely owes an

ordinary debt to the depositor.  Thus, the money deposited in a bank account is not sufficiently

specific and identifiable, in relation to the bank's other funds, to support a claim for conversion

against the bank.") (citations omitted).

"[F]unds deposited with a bank become an asset of the bank, and the bank, in

turn, becomes indebted to the depositor."  Newbro v. Freed, 409 F. Supp. 2d 386, 395 (S.D.N.Y.

2006) (citing Feinberg v. Katz, No. 99 Civ. 45(CSH), 2002 WL 1751135, at *16-17 (S.D.N.Y.

July 26, 2002)).  "Ordinarily, when the bank has misused the depositor's money, the depositor's

remedy lies in contract – not tort."  Id.

Here, when Plaintiffs deposited funds into their accounts at Citibank, these

monies became an asset of the bank.  Id. at 395.  As such, Plaintiffs "did not possess lawful

control over the funds prior to the restraints."  Cruz, 2012 WL 694267, at *12.  Moreover, funds

deposited in a general bank account are not sufficiently identifiable to support a claim for

conversion.  Accordingly, Plaintiffs' claim for conversion will be dismissed.  See In re Refco

Sec. Litig., 759 F. Supp. 2d 301, 329 (S.D.N.Y. 2010) ("In the event . . . that the bank uses the

funds, the depositor is precluded from bringing a conversion claim – a claim predicated on the

unlawful use of funds belonging to another – because, at that point in time, the funds do in fact

belong to the bank."); Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 643

(E.D.N.Y. 2000) ("As a matter of law, plaintiff as a depositor cannot assert such a conversion

cause of action against his bank.  'It is well settled that an action will lie for the conversion of

money where there is a specific, identifiable fund and an obligation to return or otherwise treat in

a particular manner the specific fund in question.'  By its terms, the principle does not apply to the bank-depositor relationship, because funds deposited with a bank do not constitute a specific and identifiable fund.") (citations omitted); Nwachukwu v. Chemical Bank, No. 96 Civ. 5118(KMW), 1997 WL 441941, at *5 (S.D.N.Y. Aug. 6, 1997) ("The relationship between a bank and a depositor is that of debtor and creditor.  Under law, funds deposited in a bank become the property of the bank, and the bank becomes indebted to the depositor for the amount of the funds deposited.  Therefore, a conversion claim, predicated on the unlawful use of funds belonging to another, is not sustainable between a bank and a depositor with a standard debtor-creditor relationship.").

## C.   <u>Breach of Fiduciary Duty</u>

"To state a claim for a breach of fiduciary duties under New York law, a plaintiff must establish:  '(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach.'"  Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., No. 08 Civ. 2437(RJS), 2011 WL 6034310, at *16 (S.D.N.Y. Dec. 5, 2011) (quoting Metro. West Asset Mgmt., LLC v. Magnus Funding, Ltd., No. 03 Civ. 5539(NRB), 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2004) (citing Weiss, Peck & Greer, LLC v. Robinson, No. 03 Civ. 0209(RWS), 2003 WL 1396436, at *7 (S.D.N.Y. Mar. 19, 2003))).  "While acknowledging the amorphous nature of a fiduciary relationship, New York courts have generally described it as one in which a party 'reposes confidence in another and reasonably relies on the other's superior expertise or knowledge.'"  Id. (citing Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007) (citing WIT Holding Corp. v. Klein, 282 A.D.2d 527 (2d Dep't 2001) (internal citation omitted))).

"It is well settled under New York law that the usual relationship of a bank and its customer is not a fiduciary one, but rather one of creditor and debtor." Republic Nat'l Bank v. Hales, 75 F. Supp. 2d 300, 316-17 (S.D.N.Y. 1999) (citing Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 158 (2d Cir. 1995); Aaron Ferrer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 122 (2d Cir. 1984)). "[T]he bank-depositor agreement standing alone creates no fiduciary relationship between the parties." Tevdorachvili, 103 F. Supp. 2d at 640 (citing Aaron Ferer, 731 F.2d at 122 (under New York law the "usual relationship" of bank and depositor is based on contractual principles, and involves no fiduciary duty from bank to depositor)).

Here, Plaintiffs have alleged no facts demonstrating that a fiduciary relationship exists between them and Citibank. "Indeed, [plaintiffs have] failed to allege anything more than a relationship of depositor to bank – precisely the contractual sort of relationship that, by itself, supports no further allegation of fiduciary breach." Id. (citing Fallon v. Wall St. Clearing Co., 182 A.D.2d 245, 250 (1st Dep't 1992) (dismissing breach of fiduciary duty claims against defendant bank because '[a] debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former")). Accordingly, Plaintiffs' breach of fiduciary duty claim will be dismissed.

### D.    Unjust Enrichment

"To state a claim for unjust enrichment under New York law, a plaintiff must allege, '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" Adam Friedman Assocs. LLC v. Media G3, Inc., No. 10-cv-5359(JPO), 2011 WL 6287981, at *3 (S.D.N.Y. Dec. 14, 2011) (quoting Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006)

(citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000))).  Quasi-contract claims such as

unjust enrichment, however, "'only appl[y] in the absence of an express agreement.'"  Leibowitz

v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009) (quoting Clark-Fitzpatrick, Inc. v. Long

Island R.R. Co., 70 N.Y.2d 382, 388 (1987)).  Citibank argues that Plaintiffs' unjust enrichment

claim must be dismissed, "because an enforceable contract governs the parties' relationship."

(Def. Br. 21)  Plaintiffs argue, however, that their unjust enrichment claim "arises wholly from

the Bank's failure to comply with [the] EIPA, not from duties imposed in the parties' purported

contract."  (Pltf. Opp. Br. 22)

   The existence of a valid contract between the parties does not invariably mandate

dismissal of an unjust enrichment claim.  See Balance Return Fund Ltd. v. Royal Bank of

Canada, 83 A.D.3d 429, 431 (1st Dep't 2011) ("Although defendants argue . . . that the payment

of any fees was covered by valid contracts . . . , such payment was based on alleged wrongdoing

not covered by the contract") (citation omitted); EBC I, Inc. v. Goldman Sachs & Co., 7 A.D.3d

418, 420 (1st Dep't 2004) ("Nor does the existence of a valid contract require dismissal of the

unjust enrichment claim, since the latter is based on alleged wrongdoing not covered by the

contract. . . .").

   However, "[w]hen a plaintiff 'does not possess a private right of action under' a

particular statute, and 'does not allege any actionable wrongs independent of the requirements of

the statute,' a 'claim[ ] for . . . unjust enrichment [is] properly dismissed as an effort to

circumvent the legislative preclusion of private lawsuits for violation of the statute.'"  Broder v.

Cablevision Sys. Corp., 418 F.3d 187, 203 (2d Cir. 2005) (quoting Han v. Hertz Corp., 12

A.D.3d 195, 196 (1st Dep't 2004) ("[s]ince no private right of action exists, the claims for money

had and received and unjust enrichment were properly dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute")).

Because Plaintiffs assert that their unjust enrichment claim "arises wholly from the Bank's failure to comply with [the] EIPA" (Pltf. Opp. Br. 22), and because this Court has determined that an account holder has no private right of action under the EIPA to seek damages against his or her bank, Plaintiffs' unjust enrichment claim must be dismissed. See Broder, 418 F.3d at 203 ("Because [plaintiff] 'does not allege any actionable wrongs independent of the requirements of the statute[s] [under which there is no private right of action],' his claim for unjust enrichment was properly dismissed.").

### E. Negligence

"In order to state a claim for negligence under New York law, plaintiffs must allege:  (1) existence of a duty owed by defendants to plaintiff; (2) breach of that duty; and (3) that the breach was the proximate cause of plaintiff[s'] injury." Estate of Piper v. Metro. Tower Life Ins. Co., No. 07 Civ. 9548(LTS)(GWG), 2009 WL 2431956, at *7 (S.D.N.Y. Aug. 10, 2009) (citing Texas Liquids Holdings, LLC v. Key Bank Nat'l Ass'n, No. 05 CV 5070(KMW), 2007 WL 950136, at *3 (S.D.N.Y. Mar. 27, 2007)).  "'A breach of contract claim cannot be converted into a negligence claim absent a finding that a defendant breached a duty of reasonable care distinct from its contractual duties.'" Id. (quoting Texas Liquids, 2007 WL 950136, at *3 (citing New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308 (1995)).

Citibank argues that "Plaintiffs' claim for negligence is legally insufficient because they can plead no facts establishing the existence of a duty, nor any breach of that duty that caused injury to themselves."  (Def. Br. 22)  Citibank further asserts that "[t]he relationship

of a bank and its depositors is purely contractual, and an alleged breach of a purported contractual duty does not give rise to a cause of action of negligence."  (Id.)

Plaintiffs contend that the "EIPA established an independent duty that the Bank was required to adhere to with respect to the treatment of Plaintiffs['] assets following the receipt of a restraining notice.  The Bank failed to do so.  As such, a cause of action for negligence is more than sufficiently alleged."  (Pltf. Opp. Br. 23)

However, "[w]here a statute does not imply a private right of action for money damages, the plaintiff may not restate the identical claim under a negligence theory."  Cruz, 2012 WL 694267, at *15 (citing Uhr, 94 N.Y.2d at 42 (holding that statute did not imply private right of action and affirming dismissal of common law negligence claim based on same conduct)).

Here, Plaintiffs allege that, "[u]pon receipt of a restraining notice[,] Defendant owed Class Members a duty to not unlawfully restrain their accounts and to not impose unlawful fees on Class Members."  (Am. Cmplt. ¶ 61)  Plaintiffs further allege that Citibank breached its duty by "unlawfully restraining Class Members' accounts and in imposing unlawful fees on Class Members."  (Id. ¶ 62)  In essence, Plaintiffs allege that Citibank owed Plaintiffs a duty to comply with the EIPA.  Because this Court has concluded that the EIPA does not create a private right of action for judgment debtors seeking to sue their bank for money damages, Plaintiffs' negligence claim must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant's Rule 12(b)(6) motion to dismiss the

second, third, fourth, fifth and sixth causes of action in the Amended Complaint is granted.

Defendant's motion to dismiss the Amended Complaint's first cause of action under Rule

12(b)(6) is granted to the extent this claim seeks money damages, and is otherwise denied

without prejudice. The Clerk of Court is directed to terminate the motion (Dkt. No. 14).[8]

Dated: New York, New York
      March 23, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[8] Citibank has made several other arguments not addressed in this opinion. For example, as to Lopez, Defendant contends that she lacks standing and that her claims are subject to mandatory arbitration. (Def. Br. 10, 24) Because Citibank does not contend that these arguments apply to Acevado, a ruling on these issues will not bring resolution to the case as a whole. Citibank also contends that Plaintiffs' EIPA claims are preempted by federal law and regulation. (Id. at 14) In the event that (1) Plaintiffs intend to proceed on the remaining claim for injunctive relief under the EIPA, (2) Citibank moves to dismiss the claim for injunctive relief under EIPA, and (3) Plaintiff's claim for injunctive relief under the EIPA survives a motion to dismiss, the Court will permit Citibank to renew its federal preemption argument and arguments specific to Lopez.