UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELINDA ACEVADO and JACQUELINE LOPEZ, individually and on behalf of all others similarly situated,<br>      Plaintiffs,<br><br>   - against -<br><br>CITIBANK, N.A.,<br>      Defendant. | **MEMORANDUM<br>OPINION & ORDER**<br><br>10 Civ. 8030 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiffs have moved for reconsideration of this Court's March 31, 2019 Memorandum Opinion & Order (the "March 31, 2019 Opinion") (Dkt. No. 172) dismissing the Second Amended Complaint and denying Plaintiffs leave to file a Third Amended Complaint. For the reasons stated below, Plaintiffs' motion for reconsideration will be denied.

## BACKGROUND

    The factual and procedural background of this case is set forth in the March 31, 2019 Opinion.[1] The Court discusses here only those facts necessary to resolve the instant reconsideration motion.

    Plaintiffs Celinda Acevado and Jacqueline Lopez are New York residents and Citibank account holders who allege that Defendant Citibank restrained their bank accounts and charged them fees in violation of New York's Exempt Income Protection Act (the "EIPA"). (Second Am. Cmplt. ("SAC") (Dkt. No. 91) ¶¶ 10-15) The EIPA – enacted in 2008 – prohibits

---

[1] Familiarity with this Court's March 31, 2019 Opinion (Dkt. No. 172), March 13, 2015 Memorandum Opinion & Order (Dkt. No. 81), March 20, 2013 Memorandum Opinion & Order (Dkt. No. 49), and March 23, 2012 Memorandum Opinion & Order (Dkt. No. 34) is assumed.

judgment creditors from, inter alia, restraining statutorily-prescribed sums held in a debtor's bank account, regardless of the source of the funds.[2]  (Id. ¶ 19)  The statute also protects up to $2,500 in "'reasonably identifiable' federally exempt benefits payments."  (Id. ¶ 20)  Pursuant to the EIPA, banks must deem void restraining notices served by judgment creditors where the restraining notices concern bank accounts containing either 90 percent or less than the protected amount, or an amount equal to or less than $2,500 in federally exempt benefits payments.  (Id. ¶ 19; see also N.Y. C.P.L.R. §§ 5222(h)-(i))  Moreover, in such instances, banks may not charge the account holder fees in connection with the attempted restraint.  (SAC (Dkt. No. 91) ¶ 19)

Plaintiffs initiated this action on October 21, 2010, and filed an amended complaint on February 14, 2011.  (See Cmplt. (Dkt. No. 1); Am. Cmplt. (Dkt. No. 10))  The Amended Complaint, the SAC, and the proposed Third Amended Complaint ("TAC") all invoke federal jurisdiction pursuant to the Class Action Fairness Act (the "CAFA"), alleging that "[u]pon information and belief, the damages of the Class[] exceed $5,000,000. . . ."  (Am. Cmplt. (Dkt. No. 10) ¶ 7; SAC (Dkt. No. 91) ¶ 6; TAC (Dkt. No. 153-1) ¶ 9)  In orders issued on March 23, 2012, and March 20, 2013, this Court dismissed all of Plaintiffs' claims – including claims for money damages and injunctive relief pursuant to the EIPA — on the ground that there is no private right of action under the EIPA to seek such relief.  See Acevado v. Citibank, N.A., No. 10 Civ. 8030 (PGG), 2012 WL 996902, at *5-15 (S.D.N.Y. Mar. 23, 2012); Acevado v. Citibank, N.A., No. 10 Civ. 8030 (PGG), 2013 WL 1149666, at *3-6 (S.D.N.Y. Mar. 20, 2013).  Plaintiffs appealed.

---

[2]  The amount that judgment creditors are prohibited from restraining varies with the minimum wage.  (SAC (Dkt. No. 91) ¶ 19; see also N.Y. C.P.L.R. § 5222(i) ("A restraining notice issued pursuant to this section shall not apply to an amount equal to or less than the greater of two hundred forty times the federal minimum hourly wage . . . or two hundred forty times the state minimum hourly wage . . . .")).

While Plaintiffs' appeal was pending, the Second Circuit – in connection with two similar appeals involving the EIPA – certified two questions to the New York Court of Appeals: (1) "whether judgment debtors have a private right of action for money damages and injunctive relief against banks that violate [the] EIPA's procedural requirements"; and (2) "whether judgment debtors can seek money damages and injunctive relief against banks that violate [the] EIPA in special proceedings prescribed by Article 52 of the CPLR and, if so, whether those special proceedings are the exclusive mechanism for such relief. . . ." Cruz v. TD Bank, N.A., 742 F.3d 520, 522 (2d Cir. 2013).

The New York Court of Appeals answered the first question in the negative, ruling that there is no "private right to bring a plenary action for injunctive relief [or] money damages" under the EIPA. Cruz v. TD Bank, N.A., 22 N.Y.3d 61, 78 (N.Y. 2013). As to the second question, the court ruled that a "judgment debtor can secure relief from a bank arising from a violation of the EIPA in a CPLR Article 52 special proceeding," and that "the statutory mechanisms for relief [under CPLR Article 52] are exclusive." Id. Pursuant to CPLR Article 52, "a judgment debtor [who] believes that a bank has restrained assets in error in violation of the EIPA . . . can obtain a civil remedy, such as the release of money unlawfully restrained, an injunction barring transfer of exempt property . . . , or reimbursement of any bank fees improperly charged." Id. at 75-76. The judgment debtor's remedies "do not include punitive or exemplary damages, 'obey-the-law' injunctions, or disgorgement of unjust profits." Cruz v. TD Bank, N.A., No. 10 Civ. 8026 (PKC), 2014 WL 1569491, at *9 (S.D.N.Y. Apr. 17, 2014).

After the New York Court of Appeals issued its decision, Plaintiffs moved in the Second Circuit for remand, and asked the Second Circuit to direct this Court to allow Plaintiffs

to move for leave to amend. The Second Circuit granted that motion. See Acevado v. Citibank, N.A., 13-1396 (Dkt. No. 58) (2d Cir. Feb. 26, 2014).

Following remand, Plaintiffs filed a motion to amend (see Mot. (Dkt. No. 73)), which this Court denied, because Plaintiffs' proposed SAC sought remedies "far beyond" those authorized by the New York Court of Appeals. (Mar. 13, 2015 Mem. Op. & Order (Dkt. No. 81) at 13) This Court subsequently granted Plaintiffs' motion for leave to file a revised SAC (see Order (Dkt. No. 89)), which Plaintiffs filed on September 22, 2015. (See SAC (Dkt. No. 91))

The SAC asserts two causes of action, each brought on behalf of a distinct class. The first claim, premised on C.P.L.R. § 5239,[3] is brought on behalf of a class of "[a]ll individual account holders of Defendant who, during the period between January 1, 2009 and the present, had their accounts restrained . . . in violation . . . of the [EIPA] and whose accounts have . . . not been applied by a sheriff or receiver to the satisfaction of a judgment" (the "5239 CPLR Class"). (Id. ¶ 25) For this putative class, Plaintiffs seek "a release of any moneys unlawfully restrained in violation of [the] EIPA"; "a refund of any fees improperly charged by Defendant in violation of [the] EIPA"; and an injunction "[e]njoining Defendant from transferring any of the 5239 Class['s] moneys that have been unlawfully restrained by the Defendant in violation of [the] EIPA." (Id., ad damnum clause.)

The second claim, premised on C.P.L.R. § 5240,[4] is brought on behalf of a class of "[a]ll individual account holders of Defendant who, during the period between January 1,

---

[3] C.P.L.R. § 5239 provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." N.Y. C.P.L.R. § 5239.

[4] C.P.L.R. § 5240 provides that "[a] court may at any time, on its own initiative or the motion of any interested person, . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." N.Y. C.P.L.R. § 5240.

4

2009 and the present, had their accounts restrained and/or levied upon . . . in violation . . . of the [EIPA]" (the "5240 Class").  (Id. ¶ 25)  For this putative class, Plaintiffs seek "a refund of any fees improperly charged by the Defendant in violation of [the] EIPA."  (Id., ad damnum clause.)

Defendant moved to dismiss, arguing, inter alia, that this Court lacked subject matter jurisdiction, because Plaintiffs did not have a "reasonable basis to assert that the amount in controversy could reach the five million dollar threshold required by [the] CAFA."  (Mot. (Dkt. No. 107); Def. Br. (Dkt. No. 112) at 16)  This Court ordered jurisdictional discovery, and denied the motion without prejudice to renewal after jurisdictional discovery was complete. (Mar. 20, 2017 Order (Dkt. No. 119))

While jurisdictional discovery was ongoing, Plaintiffs informed the Court that they intended to seek leave to file a Third Amended Complaint, because "review of the files provided [by Citibank] and a recent determination by the Appellate Division Second Department establishes that, if given leave to replead . . . there is sufficient evidence to conclude that well in excess of five-million dollars is at issue in this case."  (Nov. 30, 2017 Pltfs. Ltr. (Dkt. No. 137) at 1)  According to Plaintiffs, jurisdictional discovery "indicated that . . . Defendant aggregated the value of multiple depositor accounts together in order to calculate the exemption amount," a practice that the Second Department had "recently ruled . . . violate[s] [the EIPA]."  (Id. at 2 (citing Jackson v. Bank of Am., N.A., 149 A.D.3d 815 (2d Dept. 2017))  The proposed TAC added a representative plaintiff whose accounts had been aggregated impermissibly.  (Id.)  The proposed TAC seeks "damages from the unlawful aggregation of depositors' accounts prior to calculating EIPA exemptions, resulting in the deprivation of exempt property from depositors." (Id. at 1)

After jurisdictional discovery was completed, Defendant moved to dismiss the SAC, while Plaintiffs moved for leave to file the proposed TAC. (Def. Mot. (Dkt. No. 157); Pltfs. Mot. (Dkt. No. 152))

This Court's March 31, 2019 Opinion grants Defendant's motion to dismiss and denies Plaintiffs leave to file the proposed TAC. In so ruling, this Court described in detail the parties' respective analyses of the results of jurisdictional discovery. (See Mar. 31, 2019 Mem. Op. & Order (Dkt. No. 172) at 13-18) According to Plaintiffs' analysis, the fees imposed in violation of the EIPA amount to $2,552,839 for the period from 2009 to the September 22, 2015 (the filing date of the SAC), and $3,403,816.09 when the period is extended to December 31, 2017. (Id. at 16-17) These sums are, of course, well below the CAFA threshold.

Consistent with the proposed TAC's new claim that Defendant impermissibly aggregated Plaintiffs' accounts, Plaintiffs' damage calculations include damages stemming from Citibank's alleged improper aggregation of account holders' accounts. According to Plaintiffs' analysis, $5,482,844.99 was improperly aggregated and restrained between 2009 and September 22, 2015, and more than $7.3 million was improperly aggregated and restrained between 2009 and December 31, 2017. (See id. at 17-18)

Plaintiffs' new proposed improper aggregation claim is premised on Jackson v. Bank of Am., N.A., 149 A.D.3d 815 (2d Dept. 2017). (See Nov. 30, 2017 Pltfs. Ltr. (Dkt. No. 137) at 2) In that EIPA class action against the Bank of America, plaintiffs claimed that when restraining notices were sent to the defendant, the bank improperly aggregated the amounts in account holders' checking and savings accounts, instead of determining which funds were exempt on an account-by-account basis. Jackson, 149 A.D.3d at 816-17. Bank of America moved to dismiss, arguing that such aggregation was permissible. Jackson, 149 A.D.3d at 817.

The King's County Supreme Court denied the bank's motion, and the Second Department affirmed, concluding that while the EIPA "is ambiguous as to whether it applies to an 'amount' on deposit at a bank or to each 'account' maintained at a bank," the legislative history "indicates that the statute applies to each account." Jackson, 149 A.D.3d at 821.

In its March 31, 2019 Opinion, this Court assumed that Jackson is correct in holding that the EIPA forbids aggregation of accounts when calculating exempt amounts under the EIPA. (See Mar. 31, 2019 Mem. Op. & Order (Dkt. No. 172) at 19-20) This Court rejected Plaintiffs' proffered aggregation damages, however, because Plaintiffs' calculation "reflects [Plaintiffs'] estimate of all funds restrained by Citibank between 2009 and 2017 as the result of improper aggregation." (Id. at 21) This Court concluded that the relevant figure was the amount of funds Citibank continued to restrain – not all funds that the bank had ever restrained. The latter figure would include funds that Citibank had transferred to third-party judgment creditors as well as funds that Citibank had already returned to Plaintiffs and other class members. (Id. at 20-21)

Plaintiffs were not entitled to such funds, this Court explained, because "[i]f money restrained in the past has since been transferred to a third-party judgment creditor, the New York Court of Appeals has made clear that Plaintiffs' avenue for relief is to sue the judgment creditor, and not the bank." (Id. at 20) Similarly, if unlawfully restrained funds had been returned to class members, "the relief available pursuant to C.P.L.R. 5230 and 5240 is "merely 'remedial in nature. . . .'" (Id. at 20 (citing Cruz, 2014 WL 1569491, at *9 and quoting id. at *8)) As Plaintiffs had "offered no evidence that Citibank now holds in restraint improperly

7

aggregated funds that may be released to Plaintiffs as a result of this litigation," this Court refused to consider the proffered "aggregation damages."[5]  (Id. at 21)

Without the proposed "aggregation damages," Plaintiffs did not come close to meeting the $5 million CAFA threshold.  Accordingly, this Court granted Defendant's motion to dismiss for lack of subject matter jurisdiction, and denied Plaintiffs' motion for leave to file the proposed TAC, finding that the proposed amendment would be futile and that, in any event, the proposed late-stage amendment would cause Defendant undue prejudice.  (See id. at 24-28 & 28 n.16)

On April 12, 2019, Plaintiffs moved for reconsideration of the March 31, 2019 Opinion.  (See Pltfs. Br. (Dkt. No. 176))

## DISCUSSION

### I. LEGAL STANDARD

Reconsideration is "an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources,'" In re Initial Public Offering Sec. Litig., 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)), and may be granted only where a court has overlooked "'controlling decisions or factual matters that were put before it on the underlying motion'" and which, if examined, might reasonably have led to a different result. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

---

[5] The Court also concluded that, to the extent Plaintiffs sought to meet the CAFA threshold through the value of the injunctive relief they sought, Plaintiffs had offered no evidence demonstrating that value.  (See id. at 23-24)

"Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" Christoforou v. Cadman Plaza N., Inc., No. 04 Civ. 08403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar. 19, 2009) (quoting Shamis, 187 F.R.D. at 151). "The decision to grant or deny a motion for reconsideration or reargument is in the 'sound discretion of a district court judge and will not be overturned on appeal absent an abuse of discretion.'" Wechsler v Hunt Health Sys., Ltd., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002) (quoting Davidson v. Scully, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001)) (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)).

## II.   ANALYSIS

Plaintiffs contend that this Court's "conclusion that [Citibank] could not be held liable for damages from [its] unlawful conduct in aggregating accounts to which the protections of the [EIPA] apply is erroneous." (Pltfs. Br. (Dkt. No. 176) at 2).

As an initial matter, it is plain from the Court's March 31, 2019 Opinion that it reached no such conclusion. (See Mar. 31, 2019 Mem. Op. & Order (Dkt. No. 172)) To the contrary, this Court relied on Jackson v. Bank of Am., N.A. in assuming that Citibank could be held liable for improper aggregation of accounts, provided that the funds in those accounts were currently restrained. (See id. at 19-21)

Plaintiffs now argue, however, that this Court erred in holding that Plaintiffs could not recover unlawfully aggregated funds that had been turned over to a judgment creditor. According to Plaintiffs, this Court erred because it "was unaware of the scope of the arguments raised before, and rejected by, the Second Department" in Jackson. (Pltfs. Br. (Dkt. No. 176) at 3) Plaintiffs point to Bank of America's brief on appeal before the Second Department, in which

9

Bank of America argued that plaintiffs improperly sought "recovery of funds that are purportedly 'exempt' but restrained and thereafter turned over to the judgment creditor. . . ." (Id. (quoting Def. Brief (Dkt. No. 175-1) at 4))

The Jackson court did not explicitly address Bank of America's argument that restrained amounts turned over to a third-party judgment creditor could not be recovered under the EIPA. Instead, after concluding that aggregation of a customer's accounts was impermissible, the Second Department merely stated that Bank of America's "remaining contentions are without merit." Jackson v. Bank of Am., N.A., 149 A.D.3d 815, 822 (2d Dept. 2017). According to Plaintiffs, "[i]n and by that statement, the Second Department explicitly rejected [Bank of America's] repeated arguments that damages sustained by class members as a result of improper aggregation . . . are not recoverable against [Bank of America to the extent that those funds have been turned over to a third-party judgment creditor]." (Pltfs. Br. (Dkt. No. 176) at 5). This argument is not persuasive.

As an initial matter, this Court has repeatedly ruled that the remedies against a bank for violations of the EIPA are limited and do not include recovery of funds transferred to a third-party judgment creditor. (See Mar. 13, 2015 Mem. Op. & Order (Dkt. No. 81) at 7-13; Mar. 20, 2017 Order (Dkt. No. 119) at 4) Plaintiffs never suggested in their briefing on the motion to dismiss the SAC or on the motion for leave to file the proposed TAC that Jackson alters the remedies available under the EIPA.[6] Reconsideration is not proper where, as here, a

---

[6] Plaintiffs' failure to make such an argument is particularly noteworthy given that it was Plaintiffs who – in February 2015 – brought the Kings County Supreme Court's decision in Jackson to this Court's attention. (See Feb. 17, 2015 Pltf. Ltr. (Dkt. No. 79)) In response, this Court stated that to the extent the Kings County Supreme Court's Jackson decision "could be read to suggest that a full range of monetary remedies are available to account holders," the Court "rejects that view," because the Supreme Court's decision "contains no analysis as to how such an outcome is consistent with the Court of Appeals' decision in Cruz." (Mar. 13, 2015

10

party "advance[s] new facts, issues, or arguments not previously presented to the Court." Christoforou, 2009 WL 723003, at *7 (internal quotation marks and citation omitted).

In any event, the Court does not regard Jackson's concluding sentence – that "[Bank of America's] remaining contentions are without merit," Jackson, 149 A.D.3d at 822 – as a holding that EIPA plaintiffs may recover funds that were unlawfully restrained and subsequently turned over to a third-party judgment creditor.

As an initial matter, it is not clear that – in saying at the conclusion of its opinion that Bank of America's "remaining contentions are without merit" – the Second Department was rejecting Bank of America's contention that funds turned over to third-party judgment creditors are not recoverable under the EIPA.  Id.  At an earlier point in its decision, the Second Department acknowledged that "plaintiffs herein seek certain relief – including punitive damages and an injunction – that is not available in a proceeding pursuant to CPLR article 52."  Id. at 817. The court, however, "reject[ed] [Bank of America's] contention that, as a result, the action must be dismissed in its entirety," explaining that "[a]n action should not be dismissed because it was not brought in the proper form or because the plaintiff requested relief to which he or she was not entitled."  Id.  Although the Second Department did not rule that funds turned over to a third-party judgment creditor are "not available" in an Article 52 proceeding, the court acknowledged that plaintiffs were seeking relief that was "not available" in such a proceeding.  It is an open

---

Mem. Op. & Order (Dkt. No. 81) at 13 n.4). In connection with the 2018 briefing on the renewed motion to dismiss the SAC and the motion for leave to file the proposed TAC, Plaintiffs never suggested that the Second Department's 2017 decision in Jackson demonstrated that this Court's analysis was incorrect.  Although Plaintiffs cite Jackson in their briefing (Dkt. Nos. 155, 156), they do not (1) argue that Jackson permits "a full range of monetary remedies [for] account holders," much less explain how such a conclusion could be reconciled with Cruz; (2) address this Court's footnote in the March 13, 2015 Opinion referenced above; or (3) even make plain that Plaintiffs seek recovery from Citibank of aggregated funds that Citibank has turned over to third-party judgment creditors.

11

question under Jackson whether the unavailable relief referenced by the court includes funds turned over to a third-party judgment creditor.

Even if the Second Department had held that improperly aggregated funds turned over to third-party judgment creditors are recoverable as against a bank in an Article 52 proceeding for violations of the EIPA – and Jackson does not so hold – this Court would decline to follow that holding. Federal courts "are bound to apply the law as interpreted by New York's intermediate appellate courts . . . unless [they] find persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." Cornejo v. Bell, 592 F.3d 121, 130 (2d Cir. 2010) (internal quotation marks and citation omitted). Here, this Court is convinced, based on the Court of Appeals' decision in Cruz, 22 N.Y.3d 61 (2013), that New York's highest court would "reach a different conclusion" as to a plaintiff's ability to recover funds turned over to a judgment creditor. Cornejo, 592 F.3d at 130.

As this Court has previously noted (see Mar. 13, 2015 Mem. Op. & Order (Dkt. No. 81) at 6-7), in Cruz the New York Court of Appeals ruled that account holders may seek relief against their banks for violations of the EIPA via C.P.L.R. §§ 5239 and 5240, and that these mechanisms for relief "are exclusive." Cruz, 22 N.Y.3d at 78.

Section 5239 is available only where restrained funds have not yet been transferred to a judgment-creditor (see N.Y. C.P.L.R. § 5239 ("Prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding. . . ." (emphasis added))) While pursuant to Section 5239 an account holder can "obtain a civil remedy, such as the release of any money unlawfully restrained, an injunction barring transfer of exempt property to the sheriff or judgment creditor, or reimbursement of any bank fees improperly charged," Cruz, 22 N.Y.3d at 76, that provision

addresses funds not yet transferred to a judgment creditor. By its terms, Section 5239 offers no means for recovery of improperly restrained funds that have been transferred to a judgment creditor. The Court of Appeals' articulation of the available civil remedies does nothing to disturb that plain reading of the statute.

As for Section 5240, that provision provides relief to plaintiffs for violations of the EIPA "after the assets have been transferred to the judgment creditor." Id. "[I]n that event," the Court of Appeals explained, "the judgment creditor could be joined as a party and the court could reverse the transfer by issuing an order 'denying' the execution and directing restitution by the judgment creditor." Id. If the Court of Appeals believed that a bank – having impermissibly restrained funds and transferred those funds to a judgment-creditor – could be held liable to the judgment-debtor for those transferred funds, it surely would have said so. The Court of Appeals' suggestion, instead, that plaintiffs seek relief by joining the judgment-creditor as a party to the action is "persuasive evidence," see Cornejo, 592 F.3d at 130, that it would reject a lower court's ruling that funds unlawfully aggregated by a bank, and then transferred to a judgment-creditor, could be recovered from the bank.[7]

---

[7] This conclusion is consistent with the Court of Appeals' more general statements about banks' liability under the EIPA. "Considering the [EIPA] statutory scheme overall," the Court of Appeals concluded that

> the legislature intended to use banks as a conduit for information so that exemption rights would be timely communicated to judgment debtors[,] but did not intend this role to subject banks to a new type of liability. The point of the legislation was to help debtors notify banks of the presence of exempt funds in their accounts in order to prevent those funds from being restrained in the first instance – not to create yet another opportunity for litigation on the back end after an improper restraint was imposed. . . . [T]here is no basis to suppose that the legislature expected that injured judgment debtors would commence complicated and lengthy plenary proceedings to vindicate their rights. . . .

Cruz, 22 N.Y.3d at 76-77. The court likewise observed that "the EIPA explicitly provides that a judgment debtor can recover money damages arising from noncompliance with the EIPA from

13

\*        \*        \*        \*

Plaintiffs have not shown that this Court overlooked "'controlling decisions or factual matters that were put before it on the underlying motion'" and which, if examined, might reasonably have led to a different result. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). Accordingly, Plaintiff's motion for reconsideration of this Court's March 31, 2019 Opinion will be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for reconsideration is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 174).

Dated:  New York, New York
        July 4, 2020

SO ORDERED.

*[signature: Paul G. Gardephe]*

Paul G. Gardephe
United States District Judge

---

judgment creditors . . . lending significance to the legislature's failure to declare the same to be true relating to banks." Cruz, 22 N.Y.3d at 73 (emphasis in original).